UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

SAMUEL V. THOMAS,　　　　　　　　　　　　　Chapter 13
　　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 10-58206
　　　　　　　Debtor.　　　　　　　　　　　　　　Hon. Marci B. McIvor

_____/

SAMUEL V. THOMAS,

　　　　　　　Plaintiff,
　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. Proc. 10-5909
v.

CITY OF DETROIT, AMRU MEAH,
ABDUL M. AQUIL, WAYNE COUNTY
TREASURER, LUTHER WORTHMAN,
and ABC DEMOLITION COMPANY,

　　　　　　　Defendants.
_____/

### OPINION GRANTING DEFENDANTS AMRU MEAH AND ABDUL AQUIL'S MOTION TO DISMISS AND GRANTING DEFENDANT CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT

　　　　Defendants, City of Detroit, Amru Meah, and Abdul Aquil, together, filed a Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment, alleging: (1) Plaintiff's complaint should be dismissed because Plaintiff has not stated a valid cause of action against Defendants under Fed. R. Civ. P. 12(b)(1) or 12(b)(6); and/or (2) Defendants are entitled to summary judgment under Fed. R. Civ. P. 56 because Plaintiff is barred by *res judicata* or collateral estoppel from re-litigating the issues raised in his Complaint.

For the reasons set forth in this Opinion, this Court GRANTS Defendants Aquil and Meah's Motion to Dismiss for failure to state a claim and GRANTS Defendant City of Detroit's Motion for Summary Judgment on the grounds that Plaintiff's claim are barred by the doctrine of collateral estoppel.

I.

FACTUAL BACKGROUND

The following statement of facts is taken directly from a decision of the Sixth Circuit involving the same parties:

> Thomas is the owner of property in Detroit, on which the former Studebaker Building once stood. On March 3, 2000, after providing Thomas with notice and an opportunity to be heard, the Detroit City Council passed a resolution declaring the Studebaker Building to be a "dangerous building," as defined in the City's Dangerous Building Ordinance, Detroit, Mich. Ordinance 17-98, § 12-11-28.0, et seq. (July 1, 1998). The resolution authorized the building's demolition. Thomas did not request a deferral of the demolition or appeal the Council's decision. For the next five years, neither Thomas nor the City took any further action regarding the property.
>
> On the night of June 20, 2005, a fire destroyed the building. Immediately thereafter, the City of Detroit Buildings and Safety Engineering Department (BSE) inspected thebuilding's remains. BSE is a part of the executive branch of Detroit's City government. Under the Detroit City Code, BSE is charged with "administer[ing] and enforc[ing] all laws, ordinances and regulations relating to the use of land ('zoning')" as well as "all other laws and ordinances regulating the development, maintenance and use of real property in the city." Detroit, Mich. Home Rule Charter, §§ 7-401, 7-404 (2007). Defendant Amru Meah is BSE's director.
>
> BSE determined the building had collapsed onto a public right-of-way and needed to be demolished immediately. On June 22, 2005, Meah wrote to the Detroit City Council and to Thomas, calling the site "an immediate danger affecting the health, safety and welfare of the public," and stating, "under the authority of Ordinance 290-H, we are taking emergency measures to have this building or portions thereof removed with the cost assessed against the property." Thomas wrote to the City the same day, stating he had retained Ferrous Processing and Trading Company to

handle the "removal, transport and disposal" of various materials from the property.

On July 6, 2005, Meah wrote back to Thomas, stating that the demolition needed to be completed by a contractor possessing a Class A Wrecking License issued by BSE. Ferrous Processing apparently lacked such a license. Meah warned that Thomas's failure to retain an appropriate contractor would "result in legal action." He noted, "[i]f the City of Detroit has to demolish this structure, the cost will be assessed against the property and court action will be pursued to collect all cost for this demolition." Meah gave Thomas ten days to demolish the building once the Fire Department released the site.

On July 13, 2005, Defendant Abdul Aquil, assistant chief of building inspections for BSE, also wrote to Thomas. He stated that the "site must be secured and removal of debris must commence by July 15, 2005"; that "failure to proceed by this date will result in this Department immediately securing the services of a licensed demolition contractor and removing the debris"; and that "[t]he cost of this action will be assessed against the property."

Thomas wrote to Aquil on July 18, 2005, again stating his intent to clean up the site himself, using "the salvageable metal and bricks on the site" to finance the project. He asked for an additional 10 to 15 days to "sort out these issues[.]"

Aquil responded on July 26, 2005, writing that the "site must be secured, the required permits obtained and removal of the debris absolutely must commence by July 29, 2005." He continued, "[f]ailure to proceed by this date will result in this Department securing the services of a licensed demolition contractor and removing the debris[.]" This letter again warned that "[t]he cost of this action will be assessed against the property."

Thomas wrote back on July 29, 2005, stating he had not received Aquil's latest letter until July 28, 2005, one day before the City's new deadline for removal. He also asserted that the City was acting unfairly by not responding to his request to use the proceeds from salvageable materials to pay for the clean-up. The City recorded a lis pendens against the property on the same day.

Apparently hearing nothing further from Thomas, BSE hired Defendant ABC Demolition, a licensed contractor, to demolish the site and remove the debris. It appears the demolition process was completed by October 7, 2005. The City spent $485,351.50 to clear the site.

3

299 Fed. Appx. 473, 474-475 (6th Cir. October 22, 2008).

Plaintiff's Federal District Court Complaint also alleged that the Defendants, including the City of Detroit, incurred excessive demolition costs and failed to credit Plaintiff for the value of allegedly salvageable material.

On June 1, 2006, Plaintiff Samuel V. Thomas filed a lawsuit against the Defendants City of Detroit, Amru Meah, Abdul M. Aquil, Luther Worthman, and ABC Demolition Company in Federal District Court for the Eastern District of Michigan, Case No. 06-CV-10453. That lawsuit alleged the following eighteen counts:

| | |
|---|---|
| I | Violation of 42 U.S.C. § 1983; |
| II | Common Law Conspiracy; |
| III | Conspiracy to Defraud; |
| IV | Violation of Federal Due Process; |
| V | Violation of 42 U.S.C. § 1985; |
| VI | Violation of 42 U.S.C. § 1983; |
| VII | 42 U.S.C. § 1981 and 1982; |
| VIII | Fraud; |
| IX | Conspiracy for Unjust Enrichment at Plaintiff's Expense; |
| X | Unjust Enrichment; |
| XI | Common Law Conversion; |
| XII | Conspiracy to Convert Property Belong (sic) to Plaintiff; |
| XIII | Statutory Conversion; |
| XIV | Accounting; |
| XV | Violation of Substantive Due Process; |

XVI    Unlawful Taking by Excessive Fees;

XVII    Violation of 42 U.S.C. § 1985 (3) Conspiracy; and

XVIII    Intentional Infliction of Emotional Distress.

The City of Detroit filed an answer to Plaintiff's District Court Complaint and filed a Counter-Claim against Plaintiff. ABC Demolition and Luther Worthman, its owner, also filed an Answer. The Counter-Claim alleged that Plaintiff was responsible for the demolition costs under 1984 Detroit City Code § 12-11-28.4.1, 12-11-28.4.4 and MCL 125.541(7) in the amount of $485,351.50 plus interest and other costs. In response to the Counter-Claim, Plaintiff filed an Answer in which he asserted, in part, that he never received credit for or an accounting of the proceeds from the salvageable material taken from the property located at 6230 John R., Detroit, Michigan (the "Property"). Furthermore, the Answer alleged that the City of Detroit employed a demolition company that performed its work "at a much higher cost than was necessary." Answer at paragraphs 16, 18. The Answer, however, contained no assertion of affirmative defenses.

      On September 26, 2006, the City of Detroit, Aquil, and Meah filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, and City of Detroit's Motion for Summary Judgment (the "Motion") in which they sought to dismiss Plaintiff's Federal District Court Complaint and requested that the District Court grant summary judgment on the City of Detroit's Counter-Claim for the demolition costs. ABC Demolition and Luther Worthman concurred in the City of Detroit's Motion to Dismiss. In response to the Motion, Plaintiff filed a memorandum which, in part, denied the City of Detroit's Counter-Claim for the demolition costs and alleged that the costs were

5

excessive and that Plaintiff was not credited for materials salvaged from the demolition.

The District Court granted the City of Detroit's Motion to Dismiss and granted summary judgment in favor of the City of Detroit on the Counter-Claim. 2007 U.S. Dist. LEXIS 13520 (E.D. Mich. February 28, 2007). The District Court found that the Plaintiff had proffered no evidence that would support his various claims against the City of Detroit, ABC Demolition, Luther Worthman, and the other defendants. In granting summary judgment in favor of the City of Detroit on its Counter-Claim, the District Court determined that "[t]here is no dispute that the City has the authority to assess the cost of the demolition against the property, and because there is no basis to find that the City exercised its statutory authority in an unlawful manner, the Court finds there is no basis to deny the City's counter-claim." Id. at *39. The Plaintiff filed a notice of appeal.

The Sixth Circuit Court of Appeals affirmed the District Court on all grounds finding that the District Court properly dismissed each of the Plaintiff's alleged causes of action[1] and properly granted summary judgment in favor of the City of Detroit on its counter-claim for the costs of demolition. 299 Fed. Appx. 473. The Court of Appeals specifically determined that the Plaintiff "failed to come forward with any evidence creating a genuine issue as to the City's entitlement to these costs." 299 Fed. Appx. at 478.

The Plaintiff filed an appeal to the United States Supreme Court. The Supreme Court denied certiorari on March 30, 2009. 2009 U.S. LEXIS 2350.

---

[1]As to the causes of action pled against the City of Detroit, it appears that the Plaintiff appealed the District Court's dismissal of the procedural and substantive due process claims. 299 Fed. Appx. at 476-477.

6

The Plaintiff filed a Motion for Relief from Order on June 30, 2009 in the District Court. Alleging the same allegations that had formed the basis of his Complaint, the Plaintiff sought relief from the District Court's Opinion and Order under Fed. R. Civ. P. 60(b)(6). The Plaintiff claimed that the equitable doctrine of recoupment should be applied to offset the demolition costs with the value of the debris on the Property and again asserted that the cost of demolition was excessive. *Id.* The District Court, in its Order Denying Plaintiff/Counter-Defendant's Motion for Relief from Order, denied the Plaintiff's request for relief and noted that the Plaintiff "already sought to establish his entitlement to the proceeds of the City's alleged sale of salvaged material in a number of the claims he originally brought in this case; and this Court dismissed or granted summary judgment to Defendants on all of those claims." The Plaintiff subsequently appealed this Order to the Sixth Circuit Court of Appeals where the matter is still pending. Court of Appeals Case No. 09-2302.

On June 15, 2009, the Wayne County Treasurer[2] filed its annual Petition for Foreclosure (the "Petition") in the Wayne County Circuit Court. The Wayne County Treasurer is assigned the duty from the City of Detroit to collect the costs of demolition under Michigan law. Pursuant to MCL 125.541(6), if a property owner fails to pay the cost of demolition of an unsafe property, the costs of demolition, if not paid within 30 days, becomes a lien on the property and is collected in the same manner as a real property tax under MCL 211.1 to MCL 211.157. Under MCL 211.89a(1), all unpaid real

---

[2]Pursuant to MCL 211.1 et. seq. the lien on the Property resulting from the costs of demolition under MCL 125.541(6) makes the Property subject to tax foreclosure proceedings.

property taxes are returned to the county treasurer for collection on the March 1 following the year during which the taxes are levied. Accordingly, when the costs of demolition were not paid by March 1, 2006, the collection of the lien on the Property vested in the Treasurer.

Because the Plaintiff had failed to pay any real property taxes on the Property since 2004 and failed to pay off the lien for the demolition costs, the Plaintiff's Property was included in the Treasurer's Petition. In an attempt to halt the foreclosure proceedings, the Plaintiff filed Objections and Response in Opposition to Show Cause Hearing on January 15, 2010 in Wayne County Circuit Court (the "Objection"). This document challenged the Petition based on the assertion that the Plaintiff was not credited for value scrap material on the Property based on recoupment. At a hearing on March 18, 2010, Judge Virgil Clark Smith denied the Plaintiff's challenge to the Petition. On or about March 24, 2010, the Plaintiff, prior to the entry of an order granting the Petition, filed an Emergency Motion for Rehearing and Reconsideration and Stay of Foreclosure (the "Motion for Reconsideration"). The Motion for Reconsideration essentially reiterated the assertions in the Objection but also requested that the Wayne County Circuit Court delay foreclosure on the Property until the latest appeal of the District Court Case was concluded. At a hearing on May 20, 2010, Judge Smith denied the Motion for Reconsideration and an order memorializing this decision was entered on June 15, 2010.

On June 2, 2010, the Debtor filed a voluntary Chapter 13 case. On June 17, 2010, the Plaintiff filed the present Adversary Complaint alleging, in "Count Two", that the City of Detroit's lien on the Property is invalid because the bill for the demolition was

8

10-05909-mbm    Doc 46    Filed 02/01/11    Entered 02/01/11 15:18:47    Page 8 of 16

excessive and based on the equitable defense of recoupment, Plaintiff should be credited for the value of the debris on the Property. The Complaint does not include any allegations labeled "Count One".  However, there is a prayer for relief under the "Common Allegations" which asks for "lien stripping".

On December 16, 2010, the Defendants City of Detroit, Amru Meah, and Abdul Aquil filed a Motion to Dismiss or, in the alternative, Motion for summary judgment.[3] The Defendants Motion to Dismiss is based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6) alleging that this Court lacks subject matter jurisdiction and that Plaintiff failed to state a claim for which relief can be granted.  The Defendant moves for summary judgment based on *res judicata* or collateral estoppel, alleging that the issues raised in the Plaintiff's Complaint are the same issues previously decided by the Federal District Court.

On January 2, 2011, Plaintiff filed his response to Defendants' Motions, alleging that its claims are not barred by either *res judicata* or collateral estoppel and seeks credit for the proceeds of the sale of the scrap from the property.

II.

ARGUMENT

Defendants' Motion seeks to: (1) to dismiss Plaintiff's Complaint for failure to state a claim; and (2) for summary judgment based on *res judicata* or collateral estoppel, alleging that the issues raised in the Plaintiff's Complaint are the same issues

---

[3]This Court has already granted Defendants Wayne County Treasurer, ABC Demolition, and Luther Worthman's Motion to Dismiss.

9

previously decided by the Federal District Court. For the reasons set forth in this Opinion, this Court finds that Defendants Aquil and Meah are entitled to have the case against them dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). This Court further GRANTS summary judgment for Defendant City of Detroit on the grounds that Plaintiff's claim is barred by the doctrine of collateral estoppel.

A.   Motion to Dismiss

In their Motion, Defendants allege that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). This Court finds that, with respect to Defendants Aquil and Meah, Plaintiff has failed to state a claim for which relief can be granted. In Plaintiff's Complaint, the sole references to Aquil and Meah (other than in the caption) are contained in paragraphs 6 and 7, under the heading "Parties", which reads:

> 6.   Defendant, Amru Meah, at all times relevant hereto, was the Director of the Department of Building & Safety Engineering of the City of Detroit (hereinafter referred to as Meah).
>
> 7.   Defendant, Abdul Aquil, at all times relevant hereto, was employed by the City of Detroit as Assistant Chief and Building Inspections.

No where in the Complaint does Plaintiff allege any factual or legal basis for relief against Aquil and Meah.

Fed. R. Bankr. P. 7012(b), making applicable Fed. R. Civ. P. 12(b) to adversary proceedings, provides that, in lieu of filing an answer to a complaint, a defendant may file a motion to dismiss the case based on the failure of the complaint to state a claim upon which relief can be granted among other grounds for dismissal. The specificity required to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is governed by

the general pleading provisions contained in Fed. R. Civ. P. 8(a). *Gregory v. Daly*, 243 F.3d 687 (2nd Cir. 2001).

The Federal Rules of Civil Procedure set forth the basic pleading requirements for complaints in Fed. R. Civ. P. 8(a), which provides:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Generally, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To comply with Fed. R. Civ. P. 8(a), a complaint is required to contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action". *Id.*, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3rd ed. 2004). Instead, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, ___; 129 S. Ct. 1937, 1949 (2009).

In this case, Plaintiff's Complaint fails to comply with heightened pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*. With respect to Aquil and Meah, the sole reference to them in the Complaint (other than in the caption) is contained in paragraphs 6 and 7, under the heading "Parties", which states the positions Aquil and Meah hold. The Complaint in no way links Aquil and Meah to any of the allegations set forth thereafter nor is there any connection between the Aquil and Meah and the prayer for relief which seeks to have the bill for site-cleanup re-computed. The Complaint does not allege that Aquil and Meah have the ability to recompute a bill for site-cleanup nor is it clear whether the allegations against Aquil and Meah are for actions taken in their individual capacity or as agents of the City. For these reasons, the Complaint does not allow the Court to draw a reasonable inference that the Aquil and Meah are liable for the allegedly invalid lien or under a theory of recoupment. *See, Iqbal*, 129 S. Ct. at 1949. Therefore, the Court must dismiss the Complaint against Aquil and Meah based upon the pleading standards set forth in *Twombly* and Iqbal.

B.  Res Judicata

Although "collateral estoppel" and "res judicata" are often used interchangeably, the doctrines are related but quite distinct. Under *res judicata* (or, "claim preclusion") an action resulting in a final judgment bars the re-litigation, in a subsequent suit, of any claims that were or could have been raised in that action as between the same parties or their privies on the same cause of action. The elements of res judicata are as follows:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a

subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*In re Crowley, Milner and Co.,* 299 B.R. 830, 844 (Bankr. E.D. Mich. 2003).

This Court finds that the doctrine of *res judicata* does not apply in this case because Defendant is not asserting that the Plaintiff has a new cause of action which could or should have been resolved in prior litigation. Defendant is arguing that Plaintiff's cause of action has already been litigated.

C. <u>Collateral Estoppel</u>

With respect to the doctrine of collateral estoppel, Defendant argues that the issues raised in the instant Complaint have already been determined. Under collateral estoppel (or, "issue preclusion") an issue once raised, decided, and necessary to a final judgment may bar re-litigation of that issue in a subsequent proceeding between the same parties or their privies, even if the subsequent suit is based upon a different cause of action. *Hackley v. Hackley*, 395 N.W.2d 906. 909, 910 (Mich. 1986). The elements of collateral estoppel under Michigan law are as follows:

(1) there is identity of parties across the proceedings;

(2) there was a valid, final judgment in the first proceedings;

(3) the same issue was actually litigated and necessarily determined in the first proceeding; and

(4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Hinchman v. Moore,* 312 F.3d 198, 202 (6th Cir. 2002).

13

### 1. Identity of Parties Across the Proceedings

The first requirement of collateral estoppel requires that the same parties are involved in both the initial and the subsequent case. This is a requirement known as the doctrine of mutuality of estoppel.

> The doctrine of mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must also have been a party, or a privy to a party, in the previous action. In other words, 'the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him'.

*Lichon v. Am. Universal Ins. Co.*, 459 N.W.2d 288, 297-98 (Mich. 1990)(*quoting Howell v. Vito's Trucking & Excavating Co.*, 191 N.W.2d 313, 316 (Mich. 1971). In this case, both Plaintiff and Defendants City of Detroit, Aquil and Meah were parties to the District Court case (2-06-CV-10453). Therefore, the first element of collateral estoppel is met.

### 2. Valid, Final Judgment in the First Proceedings

The second element of collateral estoppel requires that there be a valid, final judgment in the first proceedings. The United States District Court of the Eastern District of Michigan and the Sixth Circuit Court of Appeals have issued opinions and orders dismissing Plaintiff's Complaint filed in the District Court. Therefore, a final judgment on Plaintiff's lawsuit has been entered. Therefore, this element of collateral estoppel has been met.

### 3. The Issue Was Actually Litigated and Necessarily Determined in the First Proceeding

The third requirement for collateral estoppel requires that the issues presently

14

before the Court were both actually litigated and necessarily determined in the first proceeding. "Actually litigated" requires a finding that the party objecting to the application of collateral estoppel had "substantial participation" in the prior litigation. *In re Wellinger,* 371 B.R. 249, 253 (E.D. Mich. 2007)*; Building Commc'ns, Inc. v. Rahaim*, 324 B.R. 29 (Bankr. E.D. Mich. 2005). "Necessarily determined" requires that the issue be essential to the judgment. *Wellinger,* 371 B.R. at 253*; Robinson v. Callender*, 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997) (quoting *People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990)); *see also Detroit Auto. Inter-Ins. Exchange v. Higginbotham*, 290 N.W.2d 414, 418 (Mich. Ct. App. 1980) (citations omitted) (stating that a default judgment "is conclusive only as to those matters essential to support the judgment").

In this case, this Court finds that the causes of action set forth in the Adversary Proceeding were necessarily determined by the District Court. The District Court ruled that the City of Detroit demolished Plaintiff's property in a lawful manner and that the City of Detroit was entitled to all costs incurred in the demolition. Defendant City of Detroit's notice of lis pendens and any subsequent liens are valid because the underlying judgment has been fully litigated. Therefore, this element of collateral estoppel has been met.

4. <u>The Party Against Whom the Doctrine Is Asserted Had a Full and Fair Opportunity to Litigate the Issue in the Earlier Proceeding</u>

The fourth element required for applying collateral estoppel is that the party

against whom collateral estoppel is asserted must have been afforded a full and fair opportunity to litigate the issue in the prior proceeding. Because Plaintiff filed the District Court proceeding, Plaintiff had a full and fair opportunity to litigate the issue of his liability to Defendant City of Detroit. In fact, Plaintiff has had multiple opportunities to challenge the District Court's ruling in the form of appeals and motions for reconsideration and has lost in every forum.

In summary, collateral estoppel applies in this case with respect to the City because: (1) there is an identity of parties across the proceedings; (2) there was a valid, final judgment; (3) the issue regarding Plaintiff's liability to the City of Detroits was actually litigated and necessarily determined; and (4) Plaintiff had a full and fair opportunity to litigate all issues in the District Court.

III.

CONCLUSION

For the above stated reasons, this Court GRANTS Defendants Aquil and Meah's Motion to Dismiss for failure to state a claim and GRANTS summary judgment for Defendant City of Detroit.

Signed on February 01, 2011

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge